**AMARILLO MUT. BENEVOLENT ASS'N v.
FRANKLIN et al.***

No. 12359.

Court of Civil Appeals of Texas. Fort Worth.
Sept. 27, 1930.

Rehearing Denied Oct. 25, 1930.

Cooper & Lumpkin, of Amarillo, for appellant.

Felder & Nelson and W. E. Wilson, all of Wichita Falls, for appellees.

BUCK, J.

This is a suit by Mrs. Mary C. Franklin, joined by her husband, J. C. Franklin, against the Amarillo Mutual Benevolent Association, a local mutual aid association which has its domicile in Potter county, Tex. The plaintiff below alleged:

That on or about October 11, 1923, the Fort Worth Mutual Benevolent Association, Amarillo Division, issued to the plaintiff its policy of insurance, which policy was conditioned that the Fort Worth Mutual Benevolent As-

sociation, Amarillo Division, would pay to J. C. Franklin, husband of Mary C. Franklin, a sum not to exceed $1,500 in case of the death of Mary C. Franklin, and $1 received from each member in good standing if she died in good standing. That said policy further provided:

"Should any member become totally and permanently disabled prior to attaining the age of sixty-five (65) years, the Mutual Benevolent Association agrees to pay the sum of $1.00 received from each member in good standing not to exceed the sum of $1,500.00; provided that said member claiming said disability benefit had been totally disabled and continues so for a period of ninety (90) days, and that this certificate has been in force for a period of one year, said total and permanent disability of the insured must be due to bodily injuries or disease occurring after the date hereof, and while this policy is in full force, and must be such as to prevent the insured then and at all times thereafter from performing any work or conducting any business for compensation or profit, this Association upon satisfactory proof of such disability, at the option of the member, and in lieu of all other benefits hereunder, pay to said member the total benefits upon the surrender of this certificate which shall become null and void and of no effect."

That on or about November 10, 1926, the Amarillo Mutual Benevolent Association took over the business of the Fort Worth Mutual Benevolent Association, Amarillo Division, and assumed the payment of all the policies issued by it, and assumed all of the obligations of said concern. That, by reason of this assumption, the defendant became liable and bound to pay to the insured any insurance and all benefits due on any policy written by the Fort Worth Mutual Benevolent Association. That on or about November 1, 1928, prior to the attaining of the age 65 years by plaintiff, she became wholly and totally disabled. That her certificate had then been in force for a period of one year, and that said total and permanent disability was due to bodily injuries and disease occurring after the date of the issuance of the policy and while the policy was in full force, and that such disability was of such a nature as to prevent her from thereafter performing any work or conducting any business for compensation. That said disability had continued for more than ninety days, and that she will be totally and permanently disabled for the balance of her life. That on May 1, 1927, plaintiff was in an automobile accident which injured her left leg and knee, and tore and wrenched certain ligaments and tendons in her leg. That since said time she has had very little use of her leg and cannot stand on it for any appreciable length of time. That her left foot and knee are swollen. That the use of the tendons has been impaired. That

her tendons are always swollen. That she has varicose veins in her left leg of such a nature that they bleed with even a slight injury. That her sight and hearing are impaired. That her heart action is weak. That she has a traumatic leg and arthritis in her left knee. That she has kidney disturbances and Bright's disease. That on or about March 4, 1929, plaintiff gave defendant notice of her total and permanent disability and demanded payment for same. That defendant has failed and refused to pay the amount due her. Plaintiff sued for $1,500, alleging that there are more than 1,500 members in the class to which she belongs.

The defendant answered, which answers are rather lengthy and will be noticed in a further discussion of this case.

Upon a trial before a jury upon special issues, the jury found (1) that plaintiff was unable to substantially do all of the material acts necessary to the prosecution of her occupation or business in the usual and customary manner prior to February 15, 1929; (2) that such disability had never ceased since it was incurred and will continue throughout the life of plaintiff; (3) that such disability was due to bodily injury or disease occurring after October 11, 1924; (4) that such disability has prevented plaintiff since it occurred, and will prevent her at all times in the future, from performing any work or conducting any business for compensation or profit.

### Opinion.

Appellees object to a consideration by this court of all of appellant's brief, and especially of certain of appellant's propositions, but we conclude that the issues made in appellant's brief can be readily answered, and therefore ignore the objections.

The policy sued on in this case provided that the association would pay $1 received for each member in good standing, and not to exceed $1,500, and the proof having shown that there were 1,228 members in the class to which plaintiff belonged after the class had been divided, and further having shown that there was a reserve in one of the classes to which plaintiff belonged at the time of the assumption by appellant, we think the trial court was justified in rendering judgment for $1,228.

In Texas Mutual Life Insurance Ass'n v. Wilson, 19 S. W. (2d) 591, 595, this court said:

"Appellant urges that the trial court erred in peremptorily instructing the jury to return a verdict in favor of plaintiff for $2,500 (a) because the policy or certificate introduced in evidence by plaintiff upon which she was suing shows on its face that defendant is only bound to pay the plaintiff in any event the sum of $5 to be collected from each member of said association in good standing in class B; (b) there was no showing of the number of

members in good standing in this class and no proof that would justify the court in rendering judgment in the sum of $2,500.

"If there were not sufficient members of the class to which insured belonged, when assessed at $5 a member, nobody knew such fact as well as did defendant itself. It offered no evidence upon this question, nor did it plead an insufficiency of membership in the class to produce at $5 a member the $2,500, the maximum amount of the policy. Therefore we overrule this assignment."

See Supreme Council v. Anderson, 61 Tex. 296; International Order, etc., v. Boswell (Tex. Civ. App.) 48 S. W. 1108; Fort Worth Mutual Benevolent Ass'n v. Guire (Tex. Civ. App.) 292 S. W. 910; Fort Worth Mutual Benevolent Ass'n v. Haney (Tex. Civ. App.) 17 S. W. (2d) 104; Sweetwater Progressive Mutual Life & Accident Ass'n v. Allison (Tex. Civ. App.) 22 S. W. (2d) 1107.

While the appellant might be relegated to the membership in the class to which appellee's policy belonged, for the collection of this judgment, yet we do not think that it can complain of the judgment rendered, in the absence of pleading or proof that it did not have 1,228 members in such class. Propositions 1 and 2 are therefore overruled.

■ The third proposition is in effect where a local mutual aid association, organized under article 4859 of the Revised Statutes of 1925, issues a certificate of membership to its members, providing for the payment of a benefit of such sum as may be realized by the assessment of other members of $1, not to exceed $1,500, for total and permanent disability occurring from sickness or disease, and the by-laws and constitution of such association provide that such total disability must exist ninety days prior to the attaining of the age of 65 years, such provisions are binding upon its members, and, in order to be entitled to relief and to receive such amounts as may be realized from such assessment of said association, a member must allege and prove that such total and permanent disability occurred and existed for ninety days prior to the time of reaching the age of 65 years.

The policy provides: "Should any member become totally and permanently disabled prior to attaining the age of sixty-five (65) years, the Mutual Benevolent Association agrees to pay the sum of $1.00 received from each member in good standing," etc.

The by-laws of appellant with reference to this matter provide: "Should a regular member in good standing for one year or longer, and under age 65 sustain accidental injuries resulting, within four months in his total and permanent disability, he shall be paid $1.00 received from each member in his class, not to exceed $1,500.00."

The jury, in answer to issues submitted by the court found that prior to February 15, 1929, the plaintiff was unable to substantially do all of the material acts necessary to the prosecution of her occupation or business in the usual and customary manner; that the disability above mentioned had never ceased since it was incurred; that permanent and total disability was due to bodily injuries or disease occurring after October 11, 1924; that the disability had prevented plaintiff since it occurred, and would prevent plaintiff at all times in the future, from performing any work or conducting any business for compensation or profit. The facts amply sustain these findings. Mrs. Franklin was 65 years old on February 15, 1929, and her policy was issued on October 11, 1923. Suit was filed on May 7, 1929. Therefore at the time suit was filed more than ninety days at least had elapsed since Mrs. Franklin had become disabled, which disability was shown, and the jury so found, to be permanent. The policy did not provide that appellee should be permanently disabled ninety days prior to her sixty-fifth birthday, but the cause of disability should have occurred prior to her sixty-fifth birthday. We conclude this proposition should be overruled.

■■ The fourth, fifth, and sixth propositions, treated as a group, complain that the appellant was not required to levy an assessment for its members on account of total and permanent disability, unless such disability was occasioned by injury or disease, and that, when a person becomes a member of the mutual benevolent association and receives a certificate of membership therein providing for the payment of benefits to such members upon becoming totally disabled before reaching the age of 65 years, and thereafter such membership is transferred to a local mutual aid association, organized under article 4859 of the Revised Civil Statutes of Texas, and which statute limits the members in any one class to 2,000, and which is governed by a constitution and by-laws which provide for the levying of an assessment of its members only for total and permanent disability occasioned by accidental means, such member can recover an assessment only from such members in his or her class who may hold reciprocal certificates and who can likewise receive benefits in accordance with such assessments.

It appears from the testimony that, subsequent to the taking over by the appellant of those insured in the Fort Worth Mutual Benevolent Association, the secretary of appellant association divided the class to which Mrs. Franklin belonged and assigned her to one of the classes in which there were only 633 members. Mrs. Franklin testified that she knew nothing about this division, and therefore the limits on her rights. The evidence shows that, at the time of the transfer from the Mutual Benevolent Association to the appel-

lant, there were 3,000 members in the class to which the plaintiff below belonged. We do not think that appellant was authorized to change its contract, or to divide its classes, so as to alter or impair the benefits to which the insured were entitled under the policy as it was written.

In Hawkinson v. Order of United Commercial Travelers of America, 20 S. W. (2d) 101, 102, the El Paso Court of Civil Appeals said: "In the conclusion stated we think the court erred. There are decisions in some jurisdictions which support the ruling made, but the weight of authority is that a reserved right of a mutual benefit insurance association to amend or alter its by-laws does not authorize an amendment or alteration which materially impairs the obligation of its prior contracts of insurance. 2 Cooley's Briefs on Ins. (2d Ed.) p. 1170 et seq.; 45 C. J. p. 38, § 31. This seems to be the view adopted by the courts of this state. Ericson v. Supreme Ruling, etc., 105 Tex. 170, 146 S. W. 160." See Francis v. International Travelers' Ass'n (Tex. Civ. App.) 260 S. W. 938.

In the case of Fort Worth Mutual Benevolent Ass'n v. Guire (Tex. Civ. App.) 292 S. W. 910, 911, cited by appellant, the secretary of appellant association testified that the different classes of the association were abolished because of the depreciation in membership. This action on the part of the secretary made the benefits due under the policy less than they would have been had it not been for his unauthorized action in abolishing certain classes. In passing upon this question, the court said: "The proof shows that only one assessment was levied against each member of the Greenville division, and that none was levied on members outside of that division. There is nothing in the evidence offered showing what constitutes a division, or of what it is composed, or any authority for organizing and creating separate divisions. * * * If any of the members of the Greenville division held certificates in more than one of the classes to which Guire belonged, they would therefore be subject to more than one assessment in order to make up the maximum amount due on his certificates. The secretary had no authority to reduce the value of Guire's certificates of insurance by abolishing the classes and requiring only one assessment from each member, regardless of their former status or class membership."

■ The seventh proposition is: "The attempted assumption by local mutual aid association organized under article 4859 of the Revised Civil Statutes of 1925 of obligations not authorized by its constitution and by-laws is ultra vires and not binding on such association."

The evidence showed that appellee was issued her policy on October 11, 1923, by the Fort Worth Mutual Benevolent Association, that this policy was assumed by the appellant in October of 1926, and that appellee continued to pay her dues and assessments up to her sixty-fifth birthday, on February 15, 1929, and for some time thereafter. She alleged that her disability occurred about November 1, 1928, and the evidence disclosed that it began some two years previous, and that since the summer of 1927 she had not been following her usual occupation of practical nursing and of taking in washing.

In Continental Fire Ass'n v. Masonic Temple Co., 26 Tex. Civ. App. 139, 62 S. W. 930, 931, by the San Antonio Court of Civil Appeals, it is said: "Appellant's contention is embodied in its propositions as follows: (1) The policy, having been issued in violation of appellant's charter and of the laws of Texas, and of the laws of the Dominion of Canada, is ultra vires and void.' (2) Appellant is not estopped from setting up the ultra vires character of said contract as a defense to plaintiff's action. According to the charter of this corporation, its members—and, of course, all policy holders, who are, as such, members—must be resident citizens of the state of Texas; and we regard the charter as permitting it to insure property situated in Texas only. Nevertheless it appears to have had agents outside of the state, and to have issued this policy to a nonresident corporation insuring property in Ontario. The company received and accepted the premium, and it was an executed contract of insurance. The authorities on the subject of a corporation's liability in cases where it acts outside its chartered powers in transacting its business are conflicting, but in this state it has been decided, upon careful consideration of the question, that where the contract is executed, and the corporation has received the benefits of it, it cannot invoke its want of power as a defense. Bond v. Manufacturing Co., 82 Tex. 309, 18 S. W. 691."

In Wirtz v. Sovereign Camp, W. O. W., 114 Tex. 471, 268 S. W. 438, 441, it is said: "It is undeniably true that benevolent and fraternal organizations and life insurance companies are as subject to the operation of the law of estoppel and waiver as are individuals, and the law has, in both particulars, been repeatedly enforced against them in this state." Home Circle Society No. 1 v. Shelton (Tex. Civ. App.) 81 S. W. 84; Bankers' & Merchants', etc., Ass'n v. Stapp, 14 S. W. 168, 77 Tex. 517, 19 Am. St. Rep. 772; 29 Cyc. pl. 185, (J).

In the case of Wuerfler v. Trustees of Grand Grove of Wisconsin of the Order of Druids, 116 Wis. 19, 92 N. W. 433, 434, 96 Am. St. Rep. 940, the Supreme Court of Wisconsin says:

"It is so ruled by the familiar doctrine that when a contract made by a corporation has been so far executed that to allow the corporation to repudiate it would work in-

justice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents such repudiation regardless of whether the corporation had a right to make it or not, unless its act in that regard was in violation of some written law of the state or sound public policy; that in such circumstances, if the corporation exceeds its power, it commits a punishable offense against the sovereignty of the people, but cannot itself invoke the doctrine of ultra vires to avoid its act, at the same time inflicting a grievous wrong upon the one who has in good faith relied upon the assumption that it possessed in fact the power which it pretended to have authority to exercise.

Whether that doctrine should be applied to transactions between benefit societies and their members has been a subject for consideration in many courts, and the decisions in respect thereto are by no means harmonious. But the weight of authority is clearly in favor of treating such societies substantially the same as ordinary insurance companies and other corporations, as regards their insurance contracts."

See Cathcart v. Equitable Mut. Life Ass'n of Waterloo, 111 Iowa, 471, 82 N. W. 964, by the Supreme Court of Iowa.

The seventh proposition is overruled.

■ Appellant seemingly bases its eighth, ninth, and tenth propositions on a part of its eighth and sixteenth assignments of error, which states that the issue submitted by the court of total disability is error, and that the jury was able to determine the total disability, and it further being in effect that, because appellee was able to do a part of her household duties, the finding of the jury was without evidence to support it.

Dr. Little, Mrs. Franklin's physician, testified that Mrs. Franklin was suffering from varicose veins; that she had had hemorrhage from such varicose veins, and that there was some difference in her hearing and sight between the time he first examined her and the last time he examined her; that her heart action was slow and below normal; that her circulation was bad, etc.

The jury found, in answer to special issues, that prior to February 15, 1929, the plaintiff was unable to do substantially all of the material acts necessary to the prosecution of her occupation or business in the usual and customary manner; that such disability had never ceased since it first began; that such disability was due to injuries or disease occurring after October 11, 1924; that such disability would prevent plaintiff at all times in the future from performing any work or conducting any business for compensation or profit. This assignment is overruled.

Other propositions have been considered, and we find no merit in them, and therefore overrule them.

The judgment of the trial court is in all things affirmed.