## AMARILLO MUT. BENEV. ASS'N v. FRANKLIN et al.

### No. 1338—5874.

Commission of Appeals of Texas, Section B.
June 1, 1932.

Cooper & Lumpkin, of Amarillo, for plaintiff in error.

C. B. Felder, O. E. Nelson, and W. E. Wilson, all of Wichita Falls, for defendants in error.

RYAN, J.

On October 11, 1923, the Fort Worth Mutual Benevolent Association (a fraternal benefit society), with a division or subordinate branch at Amarillo, Tex., issued benefit certificate to Mrs. Mary Caroline Franklin, a member of that association. Her age, as stated in

the certificate, was 59 years. The certificate provided that she should pay all assessments levied by the directors, as ordered, of $1.10 on the death of any member in the same class, within 10 days from date of the call therefor, and $4 annual dues, payable semiannually on May 1 and November 1 of each year.

The certificate obligated the association to pay to "J. C. Franklin (husband) or heirs," the sum of $1 received from each member in good standing at the time of the member's death, not to exceed $1,500, should she die in good standing (other than accidental death, in which event the amount should be $2 recovered from each member, not to exceed $3,000).

It also provided that: "Should any member became totally and permanently disabled prior to attaining the age of sixty-five years, the association agrees to pay the sum of $1.00 received from each member in good standing, not to exceed the sum of $1500.00, provided that said member has been totally disabled and continues so for a period of 90 days, and the certificate has been in force for a period of one year; the total and permanent disability of the insured must be due to bodily injuries or disease occurring after the date of the certificate and while it is in full force and must be such as to prevent the 'insured' then and at all times thereafter from performing any work or conducting any business for compensation or profit." In that event, the association, upon satisfactory proof of such disability, at the member's option and in lieu of all other benefits under the certificate, obligated itself to pay said member the total benefits, upon the surrender of the certificate, which in that event shall become null, void, and of no effect. It is further stated in the certificate: "This policy is subject to all the laws of the association or orders of the Board of Directors now in force or that may be hereafter enacted."

The Amarillo Mutual Benevolent Association was organized on November 10, 1926, as a local mutual aid association under article 4859, Rev. Stat. 1925, and took over the business of the Fort Worth Mutual Benevolent Association, Amarillo Division, and immediately mailed to each certificate holder in said Fort Worth (Amarillo division) association a written notice, styled a rider on such certificates, as follows: "This is to certify that all liabilities, obligations and responsibilities imposed on The Fort Worth Mutual Benevolent Association, Amarillo Division, by the provisions of this policy are all hereby assumed by The Amarillo Mutual Benevolent Association, an independent mutual aid company with headquarters at Amarillo, Texas." Thereafter Mrs. Franklin continued to pay all assessments and dues to the Amarillo Mutual Benevolent Association, as it sent out card notices therefor, precisely the same as she had previously paid to the Fort Worth association at its Amarillo division.

Mrs. Franklin attained the age of 65 years on February 15, 1929, and on May 7, 1929, joined by her husband, filed this suit against the Amarillo Mutual Benevolent Association; she alleged that on or about November 1, 1928, she became wholly and permanently disabled, due to bodily injuries and disease occurring after the certificate had been in force for a period of one year and while it was in full force, and prior to her attaining the age of 65 years, and that such disability was of such a nature as to prevent her from thereafter performing any work or conducting any business for compensation or profit; that said disability has continued for a period of more than 90 days, and that she will be totally and permanently disabled for the balance of her life. She further alleged that on or about May 1, 1927, she was injured in an automobile accident, and sustained certain injuries, with the result that she is wholly and permanently disabled; that on or about March 4, 1929, she gave notice to the defendant association of said total and permanent disability and demanded payment for the same in accordance with said policy, and that the association failed to pay her claim or any part thereof.

She also averred that there are more than 1,500 members in the class to which she belongs, and prayed judgment for $1,500.

The case was tried before a jury upon special issues, resulting in the following findings:

(1) That plaintiff was unable to substantially do all of the material acts necessary to the prosecution of her occupation or business in the usual and customary manner, prior to February 15, 1929.

(2) That such disability has never ceased since it was incurred and will continue throughout the life of plaintiff.

(3) That such disability was due to bodily injury or disease occurring after October 11, 1924.

(4) That such disability has prevented plaintiff since it occurred, and will prevent her at all times in the future, from performing any work or conducting any business for compensation or profit.

The trial court thereupon rendered judgment against the association for the sum of $1,228, and legal interest from its date, which was affirmed by the Court of Civil Appeals.

It is contended by plaintiff in error:

(1) That, because the certificate and by-laws under which it issued provide for the payment of benefits to a member becoming totally and permanently disabled before reaching the age of 65 years, the assumption thereof by a local mutual aid association organized under article 4859, R. S. 1925, which statute limits the members in any one class to 2,000; and the by-laws of which provide for the levying of an assessment on its members only

for total and permanent disability occasioned by accidental means, is ultra vires and not binding upon the association which assumes the policies of the first association, and is not binding or enforceable against the members of the association which assumed the policies.

(2) That because the certificate of membership provides that, upon the death or happening of certain events, the member shall be entitled to recover an assessment of $1 from each of other members, not to exceed a certain sum, a judgment for a specific amount is not authorized in advance of such assessment and collection, which must be alleged and proved, the burden being upon the member.

(3) The provisions of the certificate required pleading and proof that the total disability therein referred to must have existed for a period of 90 days before attainment of the age of 65 years.

### Opinion.

■ 1. The Amarillo Association having taken over the obligations of the Fort Worth Association, such obligations are measured by the provisions of the policy legally issued by the latter association and its constitution and by-laws governing the same. If liability would have attached against the Fort Worth Association, the same liability attaches against the Amarillo Association.

■■ It is argued that no liability exists against the Amarillo Association because, under polices issued by it, its obligations extend only for payment should the insured sustain accidental injuries resulting within four months, in total and permanent disability, and not to cases of total and permanent disability due to bodily injuries or disease as covered by the policy issued by the Fort Worth Association. A sufficient answer to this is that the Amarillo Association issued no policy in this case, but took over and assumed the obligations of the Fort Worth Association evidenced by the policy herein sued on, and thereafter accepted all dues and assessments paid by defendant in error, on the faith of and under the terms of the Fort Worth Association's policy and without notice to or by her of any change in terms or conditions. The Amarillo Association simply stepped into the place of the Fort Worth Association; its charter did not, so far as the record shows, nor does article 4859, Rev. Stat. 1925, prohibit its issuance of the same character of policy sued on herein—its constitution limits the recovery for total and permanent disability to accidental injuries so resulting, but this was adopted long after the policy issued to Mrs. Franklin and, we think, applies only to policies issued by itself and not to those previously issued by another association and assumed by it as so previously issued.

■ In Continental Fire Ins. Co. v. Masonic Temple Co., 26 Tex. Civ. App. 139, 62 S. W. 930, 931, the rule followed in this state is announced to be that, where the contract is executed and the corporation has received the benefits of it, its want of power to make the contract cannot be invoked as a defense. That rule is applicable to all corporations. Bond v. Terrell Cotton & Woolen Manufacturing Co., 82 Tex. 309, 18 S. W. 691.

■ A change in the by-laws, subsequently made without the insured's knowledge or consent, does not authorize an amendment substantially altering and materially impairing the obligation of a previously made contract of insurance. Hawkinson v. Order of United Commercial Travelers (Tex. Civ. App.) 20 S. W.(2d) 101; Eaton v. Int. Travelers' Ass'n (Tex. Civ. App.) 136 S. W. 817; Wirtz v. Sovereign Camp, 114 Tex. 471, 268 S. W. 438; Independent Order of Puritans v. Brown (Tex. Civ. App.) 229 S. W. 939; 45 C. J. pp. 35, 38.

A provision in the insurance certificate of a member of a benefit society by which he agreed to comply with the orders and by-laws of the society adopted in the future had reference to the members, duties, and conduct as a member, and did not embrace an act that would produce a radical change in his rights. Ericson v. Supreme Ruling, 105 Tex. 170, 146 S. W. 160.

■■ If it be contended that article 4834, Rev. Stat. 1925, relating to fraternal benefit societies (which provides that, in case of changes, additions, or amendments to the charter or articles of incorporation, a constitution or by-laws made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries and govern and control the agreement in all respects the same as though such changes, additions, or amendments had been made prior to and were in force at the time of the application for membership), is applicable to a subsequently attempted change in by-laws made by the Fort Worth Association, such contention must be, overruled on the authority of Francis v. International Travelers' Association (Tex. Civ. App.) 260 S. W. 938, affirmed by the Supreme Court, 119 Tex. 1, 23 S.W.(2d) 282, which decided that the subsequently enacted by-laws cannot be given effect because in violation of article 4797, Rev. Stat. 1925, which was in effect when the policy sued upon was issued. As there said by Chief Justice Cureton, the contingency insured against and the sum of money promised to be paid must be specified in the policy, and the by-laws cannot be looked to for a limitation on the general language used in the policy naming the contingency insured against as the statute governs and controls.

■ On the other hand, should it be contended that the same is applicable to the Amarillo Association, as a local mutual aid association, such contention is without avail, on the authority of Hemphill County Home Protective

Ass'n v. Richardson (Tex. Civ. App.) 264 S. W. 294. In that case one of the judges was of opinion that, while there seems to be no title or even chapter of the statutes relating specifically to local mutual aid associations, and while article 4834 is a part of title 71, chapter 7 (Vernon's Sayles' Ann. Civ. St. 1914 [now title 78, c. 8, Vernon's Ann. Civ. St.]), relating to fraternal benefit associations, it is broad enough in its provisions to apply, but this was expressly denied by the majority of the court and the Supreme Court refused writ of error.

It was shown by the testimony of J. R. Durrett, who was local secretary for the Fort Worth Mutual Benevolent Association, Amarillo Division, until the organization of the Amarillo Local Mutual Benevolent Association in 1926, when he became secretary and manager of the Amarillo Association, that the Amarillo Association accepted the membership of the Amarillo division of the Fort Worth Association. He testified that the department of insurance at Austin did agree to the transfer of membership regardless of whether they were within the 50-mile radius of Amarillo or outside (Rev. Stat. 1925, art. 4859), but at the same time limited the Amarillo Mutual Aid Association to such 50-mile radius around Amarillo for soliciting new members.

He testified further that the Amarillo Association took over groups 1 and 2 and a senior group from the Fort Worth Association—Mrs. Franklin was in group 2—and at that time "there were a little over 3,000 members in it. We divided it into Group 2A and Group 2B." At that time Mrs. Franklin was in group 2B, with a membership of over 1,500, and she has remained in that class continuously ever since. On October 1st, there were 1,228 members in good standing in group 2B, 635 of whom originally had policies issued to them like Mrs. Franklin's.

It was further shown by Durrett that he and his brother, W. L. Durrett, president of the local division when it took over the Fort Worth Association, were familiar with its by-laws and the policies it had issued, also that policies like that of Mrs. Franklin were outstanding, and they did not obtain her consent to transfer her into another class, and that in group 2A there should be a little more than 633 members holding policies like that of Mrs. Franklin.

Mr. Durrett testified further that the association did not have any money in the bank in assessments on group 2B, but did have a surplus on group 2A; however, he qualified this by stating that he did not know how much money the association had in the bank at the time he testified, nor how much money it had in group 1, "but we have enough to pay off a claim in event we have one. I know the last claim, we paid it off, there would be at least $1,500.00."

■ That the secretary had no authority to thus arbitrarily divide the policyholders into classes containing members holding different kinds of policies was expressly decided in Fort Worth Mut. Benev. Ass'n v. Guire (Tex. Civ. App.) 292 S. W. 910. The effect of such classification was to arbitrarily reduce the amount to be paid, contrary to the contract evidenced by the policy and without the consent, permission, or knowledge of the policy-holding member.

The by-laws do not give the secretary the right to arbitrarily divide the membership so as to lessen the benefits due under the policy.

■ If, therefore, there were 633 members in class 2B, and 633 members in class 2A, holding the same kind and class of policy as the defendant in error, and these members are of the one class unlawfully divided by the secretary, without authority from the constitution and by-laws, and without the knowledge or consent of the membership, and the total of such membership of Mrs. Franklin's class is 1,266, the burden is upon the association to plead and prove either that it does not have the membership or other matters of defense.

In Supreme Council v. Anderson, 61 Tex. 296, it was insisted by the appellant (as plaintiff in error here insists) that the benefit certificate did not bind it to pay absolutely the sum specified, but only bound it to pay out of its benefit fund an uncertain amount not to exceed such sum, and appellee would have to show by his pleadings and proof that the condition of the fund was such that appellant was bound to pay the full sum. The court said: "This is not a correct view of the matter. The appellee has not, and the appellant has, access to all the accounts, books, vouchers and official papers of the appellant, and can ascertain at once the condition and amount of this benefit fund. If that fund is not large enough to authorize or require the association, under its rules and regulations, to pay the largest amount named in the certificate that a companion who is a sixth degree contributor is entitled to, the appellant knows it, and can set this fact up specially as a matter of defense. No such defense was set up in this case."

This rule has been uniformly followed by our courts. Fort Worth Mut. Benev. Ass'n v. Golden (Tex. Civ. App.) 287 S. W. 291; Fort Worth Mut. Benev. Ass'n v. Guire (Tex. Civ. App.) 292 S. W. 910; Int. Order of Twelve of Knights and Daughters of Tabor v. Boswell (Tex. Civ. App.) 48 S. W. 1108; Fort Worth Mut. Benev. Ass'n v. Haney (Tex. Civ. App.) 17 S.W.(2d) 104; American Cit. L. & P. Inst. v. Bandy (Tex. Civ. App.) 2 S.W.(2d) 977; Texas Mut. Life Ins. Ass'n v. Wilson (Tex.

Civ. App.) 19 S.W.(2d) 591; Sweetwater P. M. L. & A. Ass'n v. Allison (Tex. Civ. App.) 22 S.W.(2d) 1107.

2. We agree with the Court of Civil Appeals that the policy did not provide that the insured should be permanently disabled 90 days prior to her sixty-fifth birthday, but only that the cause of the disability should have occurred prior to her sixty-fifth birthday.

The policy provided that the sum of money named should be paid one who has been a member for one year and who becomes totally and permanently disabled prior to attaining the age of 65 years; it does not provide that such disability must have continued for a period of ninety days before attainment of that age. The only requirement, as we construe the policy, is that, the disability having begun, it must have continued for 90 days before claim is available, and the policy payable. However, there was both pleading and proof that disability did occur more than 90 days before Mrs. Franklin reached the age of 65, and that it continued from that time and is permanent.

3. Plaintiff in error complains of the trial court's refusal to peremptorily instruct a verdict for it and particularly of the first and second issues—by the first issue, the substance of the question asked was whether Mrs. Franklin was unable to substantially do all the material acts necessary to the prosecution of her occupation or business in the customary and usual manner, and by the second issue whether the disability is permanent and will continue through life.

Under the terms of the policy, the total and permanent disability insured against "must be due to bodily injuries or disease * * * such as to prevent the insured then and at all times thereafter from performing any work or conducting any business for compensation or profit."

In addition to submitting the first two issues which required the jury to find whether or not she was disabled and if such disability is permanent, the jury was then by issue No. 4 asked whether such disability has prevented Mrs. Franklin since it occurred, and will prevent her at all times in the future, from performing any work or conducting any business for compensation or profit.

As found by the Court of Civil Appeals, there was sufficient evidence to take the case to the jury on these issues; that she may have been able to do a small portion of her housework, with the assistance of others, was not controlling—whether or not she was totally disabled, within the meaning of the policy, was a question for the jury.

In Commonwealth Bonding & Casualty Co. v. Bryant, 113 Tex. 21, 240 S. W. 893, Associate Justice Greenwood, construing a policy covering total disability, announced the rule that the larger indemnity (provided for in the policy) was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation. To the same effect are James v. Casualty Co., 113 Mo. App. 622, 88 S. W. 125; Metropolitan Casualty Ins. Co. v. Edwards (Tex. Civ. App.) 210 S. W. 856; Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240; Great Southern Life Ins. Co. v. Johnson (Tex. Com. App.) 25 S.W.(2d) 1093.

"Total disability" is necessarily a relative matter and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupation or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith. 6 Cooley's Briefs on Insurance (2d Ed.) 5539.

Special issue No. 1 was in almost the exact language sanctioned by the above authorities.

We are of opinion that the case was correctly decided below and therefore recommend that the judgments of the trial court and the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.