**AMERICAN INS. CO. OF TEXAS v. JENKINS.**

**No. 3687.**

Court of Civil Appeals of Texas. Beaumont.
March 9, 1940.

Rehearing Denied March 27, 1940.

P. C. Fewell, of Dallas, for appellant.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellee.

O'QUINN, Justice.

Dr. O. L. Jenkins, appellee, brought this suit against American Insurance Company of Texas, a mutual insurance corporation operating under the provisions of Article 4859f of Vernon's Annotated Revised Civil Statutes of Texas, to recover monthly disability benefits at the rate of $400 per month, under a policy of insurance issued July 26, 1935, by another mutual insurance company also named American Insurance Company of Texas, which last-mentioned insurance company operated under the provisions of Chapter Six, Title 78 of the Revised Civil Statutes of Texas, hereinafter referred to as original insurer.

Appellee alleged that his disability began on January 1, 1938, and had continued regularly since said date; that appellant took over all of the assets and assumed all of the liabilities of the original insurer on January 8, 1938, and collected the monthly premiums thereafter due on the policy sued on and thereby promised, assumed and became bound to pay to appellee $400 per month so long as he lived and his disability continued. He further alleged that appellant recognized its liability on the policy and had paid him the monthly payments of $400 per month from May 25, 1938, to June 10, 1939, twelve and one-half months, amounting to $5,000, when it refused to make further payment; that appellant's failure to pay him from the date of his disability, January 1, 1938, to May 25, 1938, damaged him in the sum of $1,933.33, and from June 10, 1939, to August 10, 1939, the further sum of $800, aggregating the sum of $2,733.33, for which he prayed judgment, and further prayed for judgment requiring that appellant be required to set up and maintain a reserve fund to meet future payments based upon a life expectancy of eighteen years.

Appellant answered by general demurrer, general denial, and specially that Article 4859f, Vernon's Annotated Civil Statutes, under which it was incorporated and operated, made any contract by it to assume the payment of or to pay more than $5,000 to any one member illegal and void, and made it illegal for it to promise to pay or to divert trust funds received from payments by its present members to the payment of additional benefits to Dr. Jenkins, appellee. It also in special answer pleaded its history, corporate powers, by-laws, constitution, and that at the time of the transfer of the membership of the original insurer to the appellant organization, the liabilities of the original insurer exceeded its assets and that appellee was not an insurable risk; that the contract between original insurer and appellant, relied upon by appellee, was ultra vires, illegal and void, or, in the alternative, ultra vires, illegal and void to the extent that it promised benefits in excess of $5,000.

Appellee, by supplemental petition, answered and alleged that appellant having taken over and received by virtue of said

contract, all of the assets and assumed all of the liabilities of the original insurer, it was estopped to deny appellee's claim, and further that by accepting premium payments on the policy from appellee, appellant had ratified and confirmed the policy sued on.

The trial was to the court without a jury and resulted in a judgment in favor of appellee against appellant for $1,300, but denied appellee's prayer that appellant be required to set up and maintain a reserve to meet future payments as they matured. Notice of appeal was duly given and we have the case for review.

The case was tried upon stipulated facts among which were: That the policy sued on was issued by American Insurance Company of Texas on July 26, 1935, which company, at the time the policy was issued, and until January 10, 1938, was operating and doing business as a mutual assessment health and accident insurance association under and by virtue of Chapter Six, Title 78 of the Revised Civil Statutes of Texas, together with the amendments thereto, with no limitation upon the amount of benefits it could promise in its policies. The policy was issued to Dr. O. L. Jenkins July 26, 1935, and he made regular monthly payments of $18 per month as they fell due to the issuing association (original insurer) in the total sum of $540 of which sixty per cent, or $324, was applied to the mortuary fund for the payment of matured claims, and forty per cent, or $216, was applied to the expense fund to pay cost of operating the association. The disease, as the result of which Dr. Jenkins is now disabled and the cause of his disability, originated within the effective period of the policy. On January 8, 1938, at a regular annual meeting of the members and directors of said original insurer, two resolutions were adopted: (1) authorizing the board of directors of said original insurer to secure a charter which would permit it to write life insurance in amounts sufficiently large to comply with requests of policyholders and permit the acceptance of reinsurance of the business then outstanding on the books of the company, and authorizing and empowering said company to effect a reinsurance of the policies of said company, and to transfer its entire assets and liabilities to the new company, if, as, and when such charter could be secured. (2) Authorizing and empowering the officers and directors of the company (original insurer) to surrender its existing (Chapter Six) charter to the Attorney General of Texas for immediate cancellation following the completion of the contract of reinsurance, and requesting the officers and directors to petition the Board of Insurance Commissioners for the use of the name "American Insurance Company of Texas" (the same as the name of the original insurer) for any company into which the then policyholders may be transferred. At that time, January 8, 1938, Monarch Life Insurance Company was an association duly incorporated under the laws of the State of Texas, operating as a mutual assessment life insurance corporation under the provisions of the Acts 1933, Forty-third Legislature, page 856, chapter 245, as amended by Acts 1935, Forty-fourth Legislature, page 651, chapter 264, and Acts 1937, Forty-fifth Legislature, page 522, chapter 257, designated in Vernon's Annotated Revised Civil Statutes of the State of Texas as Article 4859f. On the same day, January 8, 1938, at a meeting of the members and directors of said Monarch Life Insurance Company, a resolution was adopted authorizing said company to assume all of the outstanding policies and liabilities of the said (original insurer) American Insurance Company of Texas, as of December 31, 1937, in consideration of the transfer of all of the assets of said (original insurer) company to the said Monarch Life Insurance Company, and that the office of said Monarch Life Insurance Company be moved from Austin, Texas, to Dallas, Texas, and the name Monarch Life Insurance Company be changed to American Life Insurance Company (the same as original insurer). The transfer was immediately made thereafter; the officers and directors resigned and the officers and directors who had formerly served the American Life Insurance Company (original insurer) were elected and qualified as officers and directors of the Monarch Life Insurance Company and its home office moved to Dallas, Texas. The permit, license and all evidence of authority to do business was thereupon surrendered by the original insurer then operating under Chapter Six, Title 78, and the Monarch Life Insurance Company was changed to American Life Insurance Company (the name of original insurer). The membership of the original insurer was transferred to and became members of the present American Insurance Company, the appellant, representing ap-

proximately 32.9% of its total membership. Notice of such transfer was sent to members before January 20, 1938. The American Insurance Company (original insurer) then operating under Chapter Six, Title 78, Revised Civil Statutes of Texas, was duly dissolved and its charter voluntarily surrendered February 18, 1938. The appellant, American Life Insurance Company of Texas, was originally incorporated as "Lincoln's Independent Knights of the World." On September 2, 1933, its name was changed to "Wonderful Workers of the World Mutual Insurance Company"— it has continuously operated under Article 4859f, Vernon's Ann.Civ.St. The name "Wonderful Workers of the World Mutual Insurance Company" was changed to "Monarch Life Insurance Company" on November 3, 1934, and to its present name, "American Life Insurance Company of Texas," January 10, 1938. Appellant's constitution and by-laws provide that it shall not issue a policy of insurance on any one life for more than $5,000, and provides that said limitation in amount of insurance shall apply to members "that have been or may be transferred, merged or rewritten" by the company, "in whole or in part from any other association, regardless of the amount of insurance the member may have carried with such other association." Appellee paid monthly assessments ($18 per month) regularly to appellant, as due, from January 20, 1938, (since the date of the transfer of his certificate by original insurer to appellant) to June 20, 1939, inclusive, and since said date tendered other payments to appellant, which were refused by appellant on the theory that if it were liable it owed him more than the premiums, and if it were not liable it should not have the premiums. The amount paid by appellee to appellant was $324 after it assumed the liability of the policy. Appellee filed his claim for disability in a manner satisfactory to appellant, for $400 per month beginning February 1, 1938. He has never filed claim for total and permanent disability. Appellee has been continuously disabled to engage in any gainful employment since May 25, 1938. He was 43 years of age at the time of the trial, and in his present condition had a life expectancy of 18 years. His malady is diagnosed as "Spondylitis Deformans" or "Sclerosis" of the motor nerves of the spine. Appellant has not repudiated its contract, but takes the position that it has paid the full amount for which it became liable by the transaction hereinbefore stated. However, if appellee should prevail in this litigation, no multiplicity of suits will result because under such circumstances appellant would renew and continue payments so long as appellee is disabled and appellant is solvent. Appellant admitted the total disability of appellee from May 25, 1938, from which date it has paid him $400 per month benefit as per the policy up to and including June 10, 1939, totaling $5,000.

We have stated rather fully the agreed facts contained in the record. There were only two contested matters of fact to be ascertained, namely: (a) appellant contended that it sent to all members of the original insurer, at the time it took over the assets and assumed the liability of the original insurer, a rider of date January 8, 1938, said rider to be attached to the respective policies, and that it sent to appellee said rider, which reads:

"American Insurance Company of Texas,
"Dallas, Texas, May 21, 1938.
"Assumption Rider
"To Be Attached To Policy No. 22470.

"Be it known that on January 8, 1938, by resolution of the Membership and Directors in joint session, it was voted to merge the membership of the American Insurance Company of Texas with the membership of the Monarch Life Insurance Company of Austin, Texas, and to change the name of the Monarch Life Insurance Company to American Insurance Company of Texas and its Home Office from Austin, Texas, to Dallas, Texas, and to assume no liability on any particular policy greater than Five Thousand ($5000.00) Dollars. Therefore, in accordance with the resolution heretofore mentioned, this Rider is to be attached to and made a part of the above numbered policy.
"American Insurance Company of Texas.
"By L. T. Lewis
"President."

Dr. O. L. Jenkins, appellee, and his wife contend and it is agreed would testify that no such rider has ever been delivered to or received by either of them.

(b) Dr. Jenkins, appellee, denied and if personally testifying would testify that prior to receiving the said benefit payments, totaling $5,000, he was not personally informed and had no actual knowledge of the transfer of his membership

from the original insurer (American Insurance Company of Texas) to appellant, American Insurance Company of Texas. Appellant contends that Dr. Jenkins was so informed and did have personal knowledge of said fact.

At the request of appellant the court filed his findings of fact and conclusions of law. The findings of fact are in accord with the agreed facts mentioned above. On the two contested matters of fact, the court found (a) that appellee did not receive the alleged rider to be attached to his policy, nor did he have notice of same; and (b) that appellee had no notice or knowledge of the assumption agreement by appellant with the (original insurer) American Insurance Company of Texas. On the facts the court concluded as a matter of law that the policy sued on was a valid, subsisting, enforceable obligation against appellant, and rendered judgment accordingly.

 Appellant's brief contains 43 assignments of error most of them pertaining to the same question, and upon which three propositions are presented. The first insists that since the provisions of Article 4859f, Vernon's Annotated Civil Statutes, under which appellant operates, must be read into any purported contract of insurance relied upon by appellee to support his claim against appellant, all such acts and purported contracts are illegal, void and unenforceable. This contention is based upon Section 12 of said article, which reads: "No corporation operating under this Act shall *write* any policy or certificate of insurance calling for a maximum benefit in excess of Five Thousand Dollars ($5,000.00) * * *." (Italics ours.)

It is also true that under appellant's present charter, appellant is limited to *writing* policies not in excess of $5,000. This does not mean, however, that appellant could not *assume* the liability of a policy issued by another company that had the power or right under its charter to write a policy for more than $5,000. American Insurance Company of Texas (original insurer) issued the policy sued on to Dr. Jenkins, appellee, on July 26, 1935, at which time it was authorized by law, and its constitution and by-laws, to issue the policy. Dr. Jenkins promptly paid all monthly premiums to keep the policy in force. Appellant here admittedly took over all of the assets and assumed all

of the liabilities of the original insurer about January 1, 1938, such assumption being in consideration of the transfer to appellant of all the assets and membership of the original insurer. After this transfer and assumption, appellee regularly continued to pay the monthly premiums as they came due under his policy to appellant, and it accepted the premiums and appropriated same to its use and benefit. Under the decisions of this state, appellant's defense of ultra vires is without support in the law.

Amarillo Mutual Benevolent Association v. Franklin, 50 S.W.2d 264, 266, by the Supreme Court of Texas, was a case where the Fort Worth Mutual Benevolent Association issued a policy of insurance to Mrs. Mary C. Franklin, which was taken over by the Amarillo Mutual Benevolent Association. Suit was filed to enforce the obligations of this policy, and the Amarillo Mutual's defense was (as here) that under its charter and by-laws it could not *write* the type of policy which it had taken over from the Fort Worth Mutual, and inasmuch as it could not *write* such a policy, it could not *assume* the liability of same, and therefore the attempted assumption was void, and so it was not liable on the policy. In refusing this contention, the court said: "The Amarillo Association having taken over the obligations of the Fort Worth Association, such obligations are measured by the provisions of the policy legally issued by the latter association and its constitution and by-laws governing the same. *If liability would have attached against the Fort Worth Association, the same liability attaches against the Amarillo Association.*" (Italics ours.)

And further: "It is argued that no liability exists against the Amarillo Association because, under policies issued by it, its obligations extend only for payment should the insured sustain accidental injuries resulting within four months, in total and permanent disability, and not to cases of total and permanent disability due to bodily injuries or disease as covered by the policy issued by the Fort Worth Association. *A sufficient answer to this is that the Amarillo Association issued no policy in this case, but took over and assumed the obligations of the Forth Worth Association evidenced by the policy herein sued on, and thereafter accepted all dues and assessments paid by defendant in error,*

on the faith of and under the terms of the Fort Worth Association's policy and without notice to or by her of any change in the terms or conditions. The Amarillo Association simply stepped into the place of the Fort Worth Association." (Italics ours.)

There is no dispute in this case, and the trial court found, that Dr. Jenkins had never had any knowledge that his original insurance company was taken over by the appellant, and had no knowledge whatever of any limitation in the by-laws of appellant company. The court, in the Amarillo case just quoted, speaking on this proposition, said: "A change in the by-laws, subsequently made without the insured's knowledge or consent, does not authorize an amendment substantially altering and materially impairing the obligation of a previously made contract of insurance."

Provision F of the policy sued on in this lawsuit, reads: "No provision of the charter or by-laws of the company not included herein shall avoid the policy or be used in any legal proceeding hereunder."

The Supreme Court, in the opinion just quoted, affirmed the Fort Worth Court of Civil Appeals, 33 S.W.2d 859, which, in its opinion, quoted with approval the case of Cathcart v. Equitable Mutual Life Association of Waterloo, 111 Iowa 471, 82 N.W. 964, 966, by the Supreme Court of Iowa. That case on the facts is very similar to the instant case. There the Iowa Masons' Benevolent Society, a mutual benefit association incorporated under the laws of Iowa, issued a certificate of membership to Aaron D. Wetherell. This was in 1887. In 1896, the Equitable Mutual Life Association took over, by a contract of consolidation, the membership of the Iowa Masons' Benevolent Society. Wetherell died, and suit was brought against the Equitable Mutual Life Association on the policy. The defense was that the attempted consolidation or assumption by the Equitable Mutual Life Association was void for the reason that the deceased was over sixty five years of age at the time of the assumption, and based its defense upon a statute of Iowa, McClain's Code Iowa, 1888, § 1767, which read: "No corporation or association organized or operating, under this act, shall issue any certificate of membership, or policy to any person under the age of fifteen years, nor over the age of sixty-five years * * * and any cer-

tificate issued or assignment made in violation of this section shall be void."

There the defendant (as here) insisted that the transaction was, in effect, the same as if the defendant had, at the time of the consolidation, issued its certificate to Aaron D. Wetherell, but the court said this was not so. Quoting from the opinion: *"The defendant never issued nor agreed to issue a certificate to Mr. Wetherell. It did not contract to insure him, but agreed to carry out an existing lawful contract of insurance. We do not think that the contract as to Mr. Wetherell was in violation of said section 1767."* (Italics ours.)

And: "Where a mutual insurance association transferred its membership to another association under an agreement that the latter should carry out the insurance contracts of the former, such arrangement was not an agreement to insure, within Code, § 1767, prohibiting such an association from insuring a person over 65 years of age, and hence the fact that a member of the association whose membership was so transferred was over 65 years of age at the date of the agreement did not release the latter association from liability on his certificate. * * * 'We can hardly think that the defendant desires to insist upon its position. If it is true, as claimed, that the certificates which it has issued, and which the holders have in good faith relied upon as a provision for their family in case of death, have no validity, and if the defendant has, since this defense has been set up, proceeded to make and collect assessments, thus falsely pretending to the certificate holders that the certificates are valid, while claiming in the courts of the state that they are not, proceedings in quo warranto should be instituted against the defendant at once. *These certificates are not to be treated as valid for the purpose of collecting assessments and invalid for the purpose of escaping liability;* and we are not prepared to say that grave consequences should not follow the act of all persons who have participated in the commission of the great wrong.' So far as the Masons' Benevolent Society, the assured, and these beneficiaries are concerned, the contract of consolidation and the contract of insurance of Mr. Wetherell has been fully executed, and under the well-recognized rules of law in such cases the defendant should be held to perform its part.". (Italics ours.)

It will be noticed that the Iowa statute prohibiting the writing of the policy referred to is stronger than the Texas statute, Article 4859f, Vernon's Ann.Civ.St., upon which appellant relies for its defense in the instant case. There the Iowa statute declares that a policy written in violation is *void*. *That under which appellee here operates nowhere declares a policy written in violation of the statute to be void, but provides for a fine against the insurance company violating said statute.* In other words, the penalty defined in this statute (Article 4859f) is directed at the insurance company alone. The case of American National Insurance Company v. Tabor, 111 Tex. 155, 230 S.W. 397, 399, supports this conclusion. In that case the Supreme Court construed Article 4954, which forbids any insurance company doing business in Texas to make or permit any discrimination in favor of one person against others with respect to premiums charged for life insurance. Any company or agent violating the article is guilty of a misdemeanor and is subject to punishment by fine under Article 416c, of White's Penal Code. As an additional penalty, the company's certificate of authority to do business in the state and the agent's license for one year may be forfeited. There it was the contention of the insurance company that the effect of Article 4954 was to render void a life insurance policy issued in this state, to one aged 64 years at the premium rate for one aged 48 years. To this the Supreme Court said:

"Such a policy contract does contravene the prohibition against discriminations between policy holders; but it does not necessarily follow that the courts will adjudge it void or refuse to enforce it. The effect of the statute on the forbidden contract depends on the legislative intent.

"The statute does not denounce as *void* any policy which violates its terms. The expressly declared consequences of infractions of the statute appear to be ample to secure its obedient observance. The Supreme Court of the United States was of the opinion that, where this was true, it was the reasonable implication that the Legislature meant for only the statutory remedies to be applied, and it did not mean for courts to refuse to enforce contracts which were not declared void or unenforceable, though in contravention of the statute. Harris v. Runnels, 12 How. 79, 13 L.Ed. 901."

Quoting further from this case:

"The language of the statute shows that the Legislature did not regard the insured and the insurer as in pari delicto in making the contracts sought to be prevented. The insurer and the insurer's agents are alone to be punished, and are alone expressly subjected to forfeiture. The command to refrain from the discriminatory acts is addressed to the insurance companies alone.

"We sanction the declaration of Judge Selden, quoted with approval in a later opinion of the New York Court of Appeals, that—

"'It is safe to assume that whenever the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as par delictum.' Tracy v. Talmage, 14 N.Y. 162, 67 Am.Dec. 145. [Italics ours.] * * *

"It would not be in accord with either the public policy declared by the act wherein the statute is found or the ends of justice to permit insurance companies to issue discriminatory policies of life insurance and collect and retain the premiums thereon and to then refuse payment after the death of the insured. [Italics ours.]

"The rule is established that a court of equity will not withhold relief where it is necessary in the interest of justice and of sound public policy to enforce a contract which is inhibited by statute, but is not declared void and is not otherwise open to attack, provided the parties are not in pari delicto, and he who is least culpable seeks relief."

It cannot be said that Dr. Jenkins, appellee, was in pari delicto with appellant, American Insurance Company. The court found that he had no notice of the assumption or any attempted change by appellant of his policy. There was no new policy issued to him. He did not take advantage of the waiver of premiums when he became disabled, but continued to send his premiums to the company. Appellee refused to receive further payments. The statute relied on by appellant, Article 4859f, Vernon's Ann.Civ.St., simply declares certain penalties against the insurance company for a violation of said statute, and it does not anywhere say that a policy issued in contravention of said law *will be void*, but like the statute construed in American National Insurance Co. v. Tabor, supra, by the Supreme Court, the penalty is directed

to the insurance company alone. The assignment is overruled.

Appellant's second proposition is in effect a restatement of the first. On the authorities above cited, Amarillo Mutual Benevolent Association v. Franklin, Tex.Com.App., 50 S.W.2d 264; Cathcart v. Equitable Mutual Life Association, 111 Iowa 471, 82 N.W. 964, and American National Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397, we overrule the assignment.

■ The third proposition asserts that since appellee failed to allege and prove an injury to Dr. Jenkins or a benefit to appellant, American Insurance Company of Texas, resulting from the transaction relied on by appellee to support his plea of estoppel, the trial court's judgment, based upon an estoppel, was error. No exceptions were levelled against the sufficiency of appellee's pleading to raise the issue of estoppel. The trial court found the pleadings supported by the facts, and held against appellant on that point. On similar facts, the doctrine of estoppel was applied in Amarillo Mutual Benevolent Association v. Franklin, Tex.Civ.App., 33 S. W.2d 859, affirmed Tex.Com.App., 50 S.W. 2d 264, where the defendant pleaded that the taking over of the Fort Worth Association by the Amarillo Association was an ultra vires act, and the court held in substance that where the assured continued to pay dues and assessments for several years after mutual aid association assumed obligations on policies issued by another association, the association was estopped from asserting its assumption of obligations on policies taken over from the other association was ultra vires.

The same doctrine was applied in Continental Fire Ass'n v. Masonic Temple, 26 Tex.Civ.App. 139, 62 S.W. 930, 931, writ denied, where the insurance company made the following contentions:

"(1) 'The policy, having been issued in violation of appellant's charter and of the laws of Texas, and of the laws of the Dominion of Canada, is ultra vires and void.'

"(2) Appellant is not estopped from setting up the ultra vires character of said contract as a defense to plaintiff's action."

In answer to these contentions, the court said:

"According to the charter of this corporation, its members—and, of course, all policy holders, who are, as such, members —must be resident citizens of the state of Texas; and we regard the charter as permitting it to insure property situated in Texas only. *Nevertheless* it appears to have had agents outside of the state, and to have issued this policy to a nonresident corporation insuring property in Ontario. *The company received and accepted the premium, and it was an executed contract of insurance.* The authorities on the subject of a corporation's liability in cases where it acts outside its chartered powers in transacting its business are conflicting, *but in this state it has been decided, upon careful consideration of the question, that where the contract is executed, and the corporation has received the benefits of it, it cannot invoke its want of power as a defense."* (Italics ours.)

In Wirtz v. Sovereign Camp W. O. W., 114 Tex. 471, 268 S.W. 438, 441, the court said: "It is undeniably true that benevolent and fraternal organizations and life insurance companies are as subject to the operation of the law of estoppel and waiver as are individuals, and the law has, in both particulars, been repeatedly enforced against them in this state."

We think there is no merit in appellant's contention that appellee was not damaged by the acts of appellant. Appellee had a contract of insurance calling for monthly payments for the rest of his life if he is totally and permanently disabled, or as long as he is totally disabled. Appellant attempts to limit that policy in the amount he is entitled to receive under his policy. It accepted the benefits of the policy without murmur until it came to paying as prescribed by the policy. There is no merit in appellant's contention that the policy, as to it, was valid up to $5,000 and invalid for any further amount. The policy showed on its face that the liability might go beyond that amount. Appellant knew this in January, 1938, when it assumed the policy—not after it had paid $5,000 to appellee, but at the very time it assumed the policy. Knowing this appellant accepted appellee's payment of premiums and continued to accept same until August, 1939. It acknowledged liability on the policy in May, 1938, and paid the monthly benefits until June, 1939, without any qualifications, without any notice to Dr. Jenkins, appellee, that it would arbitrarily stop payments at any time. Appellee continued to pay his premiums, even after disability, until appellant declined to accept them further, in

August, 1939. Estoppel to deny its full liability as provided in the contract of insurance evidenced by the policy, clearly appears in the facts. The parties are not in pari delicto. Appellee fully complied with his contract, and appellant failed to do so, and further denies that it is obligated to do so.

The judgment should be affirmed, and it is so ordered.

Affirmed.